IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES L. JEFFERSON,

        Plaintiff,                   No. 2: 09-cv-3008 GEB CKD P

   vs.

A. PEREZ, et al.,

        Defendants.          ORDER AND AMENDED FINDINGS AND

                                                RECOMMENDATIONS

_____/

I. INTRODUCTION

        Plaintiff is a state prisoner proceeding with a civil rights complaint filed pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's complaint against defendants A. Perez, Providence and Pompey, who are correctional officers.  Plaintiff alleges that defendant Perez violated his Eighth Amendment right to be free from cruel and unusual punishment when she spread a rumor that plaintiff was a "snitch."  Plaintiff's claims against defendant Providence are that he falsified an interview with plaintiff and that he was placed in administrative segregation by Providence because he failed to drop a complaint against Pompey.  Finally, plaintiff claims that Pompey roughed him up.  Defendants have filed a motion for summary judgment arguing that plaintiff failed to exhaust his administrative remedies.  Additionally,

1

defendants argue that there is no evidence to support the claims made against the defendants and/or the defendants are entitled to qualified immunity. For the following reasons, it will be recommended that this action be dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pursuant to this rule, prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process. See Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion also requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

The PLRA requires that administrative remedies be exhausted prior to filing suit. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). However, the exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt v. Terhune, 315 F.3d 1108, 1117–19 (9th Cir. 2003) (failure to exhaust is an affirmative defense). Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense. See id. at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20 "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust – a procedure closely analogous to summary judgment – then the court must

assure that [the prisoner] has fair notice of his opportunity to develop a record." Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Id. at 218. In California, prisoners are required to lodge their administrative complaint on a CDC Form 602, which requires only that the prisoner "describe the problem and action requested." CAL.CODE REGS. tit. 15, § 3084.2(a). In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit adopted the standard enunciated by the Seventh Circuit, which provides that "when a prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. at 1120 (reviewing Arizona procedures) (internal quotation marks and citation omitted). Thus, in California, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id.; see also Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 219. It is nonetheless appropriate to require that a prisoner demonstrate, through the administrative grievance process and consistent with the PLRA, that he has standing to pursue his claims against a particular defendant. "[A]t an irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened

3

injury as a result of the putatively illegal conduct of the defendant.'" Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).

### III. DISCUSSION

#### A. Perez

Plaintiff's claim against defendant Perez is that she told other inmates that plaintiff was a snitch which endangered his life. (See Third Am. Compl. at p. 2-3; Pl.'s Opp'n Defs.' Mot. Summ. J. at p. 6 ("Mr. Jefferson's complaint alleges that Defendant Perez informed other inmates that he was a snitch which endangered Mr. Jefferson's life.").) The prison had an inmate grievance system in place whereby the inmate appeal had to be submitted within fifteen working days of the event or decision that was the subject of the appeal. During the applicable time period of plaintiff's claim against Perez, plaintiff submitted five inmate appeals. (See Defs.' Statement Undisputed Facts ("DUP") ¶ 11 ("A review of Jefferson's inmate appeal records found that in June through August 2009, Jefferson submitted five inmate appeals that were processed for further review.").) In an appeal that was received for second level review on June 18, 2009 (log number CMF-M-0901607), Jefferson complained that an Officer Desouza took his copy of Jet Magazine. (See DUP ¶ 12.) In an appeal that was received for second level review on July 21, 2009 (log number CMF-M-09-01853), Jefferson complained about elections to the Men's Advisory Council. (See id. ¶ 13.) In an appeal that was received for second level review on August 5, 2009 (log number CMF-M-02017), Jefferson complained that Perez had told him about her lawsuits, that she practiced favoritism towards inmates, and that Perez called him a "trouble maker faggot." (See id. ¶ 14.) In an appeal received for first level review on August 20, 2009 (log number CMF-M-09-02133), Jefferson complained that he had wrongly been placed into administrative segregation. (See id. ¶ 15.) Additionally, in an appeal received for first level review on August 24, 2009 (log number CMF-M-09-02158), Jefferson again complained that he had been wrongly placed in administrative segregation and that it was due to discrimination. (See id. ¶ 16.)

The grievances that petitioner filed did not alert the prison to the nature of the wrong for which redress is sought with respect to Perez purportedly telling inmates that plaintiff was a snitch.  See Griffin, 557 F.3d at 1120 (standard for specificity required for prison grievance is "if it alerts the prison to the nature of the wrong for which redress is sought").  Accordingly, plaintiff did not exhaust his administrative remedies with respect to his claim against Perez.

    B.  Providence

Plaintiff asserts that his constitutional rights were violated when Providence falsified documents related to an interview and investigation and kept plaintiff in administrative segregation because he would not dismiss a grievance against defendant Pompey. (See Third Am. Compl. at p. 3; Pl.'s Opp'n Defs.' Mot. Summ. J. at p. 6.)  On August 11, 2009, plaintiff was placed into administrative segregation by Correctional Lieutenant Providence. (See DUP ¶ 19.) The basis for this was that information had been received by Providence that Jefferson was causing unrest between the inmate population and Perez. (See id. ¶ 20.) Specifically, Jefferson had been identified as the source of rumors and false allegations involving the Crips, the Bloods, and Perez. (See id. ¶ 21.) The information was contained in a memorandum written that day by Perez. (See id. ¶ 22.) Though confidential, Jefferson obtained a copy of the memorandum and later attached a heavily marked-up copy of it to an inmate appeal. (See id. ¶ 23.) The placement into administrative segregation was reviewed and approved the following day by Facility Captain Flores. (See id. ¶ 26.) Jefferson's placement in administrative segregation was then reviewed by the Institutional Classification Committee (ICC) on August 18, 2009. (See id. ¶ 27.) It was noted that an investigation into staff safety concerns was then pending. (See id. ¶ 28.) Providence was not a member of this ICC. (See id. ¶ 30.) The ICC reviewed plaintiff's placement into administrative segregation again on September 1, 2009 and although the information that Jefferson was the source of rumors and false allegations involving the Crips, the Bloods, and Perez, was not deemed reliable, there were safety concerns and it was recommended that Jefferson be transferred to another institution. (See id. ¶ 31, 33.) Providence was not a

member of this ICC. (See id. ¶ 35.) Jefferson submitted two inmate appeals regarding this decision to place him into administrative segregation. (See id. ¶ 36.) In appeal log number CMF-M-09-02133, Jefferson complained that Perez falsified safety concerns in retaliation for an earlier appeal filed against Perez so that Jefferson would be placed into administrative segregation. (See id. ¶ 37.) In appeal log number CMF-M-09-02158, Jefferson complained that he was wrongly placed into administrative segregation based upon false rumors and discrimination. (See id. ¶ 39.) He alleges in the appeal that it was in retaliation for filing an earlier appeal against Perez. (See id. ¶ 40.) The appeal does not allege that Providence placed plaintiff into administrative segregation in retaliation for an appeal filed against Pompey. (See id. ¶ 41.)

The grievances that plaintiff filed as outlined above did not alert the prison to the nature of the wrongs for which redress is sought with respect to Providence. See Griffin, 557 F.3d at 1120 (setting forth level of specificity required when filing a prison grievance). They did not alert the prison to the fact that plaintiff asserted that Providence falsified interviews or that he placed plaintiff in administrative segregation due to an appeal plaintiff filed against Pompey. Accordingly, plaintiff did not exhaust his administrative remedies with respect to his claims against Providence.

    C. Pompey

Plaintiff alleges in his third amended complaint that defendant Pompey physically assaulted him. (See Third Am. Compl. at p. 3; Pl.'s Opp'n Defs.' Mot. Summ. J. at p. 6 ("The complaint alleges that Defendant Pompey physically assaulted Mr. Jefferson.").) During his deposition, plaintiff alleged that Pompey beat him up in the first week of October 2009. (See DUP ¶ 42.) Plaintiff stated that he was in his cell, on the top bunk, when Pompey entered the cell pulled the mattress and plaintiff onto the floor, kicked plaintiff in the stomach and breasts, smacked plaintiff in the face, and kicked him in the back. (See id. ¶ 43.) A review of Jefferson's inmate appeal records found that in 2009 plaintiff submitted two inmate appeals complaining

about Pompey or making reference to him. (See id. ¶ 49.) In an appeal received for second level review on September 16, 2009 (log number CMF-M-09-02412), Jefferson complained that Pompey and others were sabotaging his food. (See id. ¶ 50.) In an appeal received for informal level review on October 19, 2009 (log number CMF-M-09-02851), Jefferson complained that Captain Flores had not provided him with a copy of his administrative order and he wished for Flores to interview him "on the C/O Pompey situation." (See id. ¶ 51.) In addition to the appeal received for informal level review on October 19, 2009, a review of Jefferson's inmate appeal records found that in October and November 2009, Jefferson submitted five other inmate appeals. (See id. ¶ 52.) In appeal received for first level review on October 12, 2009 (log number CMF-M-09-02591), Jefferson complained he was not getting his meals. (See id. ¶ 53.) In an appeal received for second level review on October 21, 2009 (log number CMF-M-09-02680), Jefferson complained that his personal property has been misplaced. (See id. ¶ 54.) In an appeal received for first formal level review on October 29, 2009 (log number CMF-M-09-02732), Jefferson complained about his placement into administrative segregation and not being given an opportunity to speak to the ICC. (See id. ¶ 55.) In an appeal received for second level review on November 3, 2009 (log number CMF-M-09-02789), Jefferson complained that Sgt. Gibson was preventing him from moving to another unit and insulting Jefferson's sexual orientation. (See id. ¶ 56.) In an appeal for informal level review on November 19, 2009 (log number CMF-M-09-3064), Jefferson complained that the mail room was holding his Jet Magazine. (See id. ¶ 58.) None of these inmate appeals submitted by Jefferson concern allegations that Pompey subjected plaintiff to excessive force in October 2009. (See id. ¶ 58.)

The grievances that plaintiff filed as outlined above did not alert the prison to the nature of the wrong with respect to Pompey purportedly physically assaulting plaintiff. See Griffin, 557 F.3d 1120 (setting forth requisite standard of specificity needed when filing a prison grievance). Accordingly, plaintiff did not exhaust his administrative remedies with respect to his claim against Pompey.

7

As plaintiff failed to exhaust his administrative remedies with respect to his claims against the defendants, it is unnecessary to analyze defendants' alternative arguments that there is no evidence to support the claims made against them and/or that they are entitled to qualified immunity on plaintiff's claims.

D. Exceptions to Exhaustion

Plaintiff contends that even if his claims are unexhausted, he qualifies for an exception to the PLRA exhaustion requirement. The Ninth Circuit has held that an inmate's failure to exhaust administrative remedies may be excused where "circumstances render administrative remedies effectively unavailable." Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that inmate's failure to exhaust his administrative remedies was excused because he took reasonable steps to exhaust his claim and was precluded from exhausting, not through fault of his own but by the Warden's mistake); see also Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) (explaining that even if exceptions apply to PLRA's exhaustion requirement, plaintiff had not shown "that administrative procedures were unavailable, that prison officials obstructed his attempt to exhaust or that he was prevented from exhausting because procedures for processing grievances weren't followed."). Petitioner asserts that he should be excused from exhaustion because "prison officials obstructed his attempts to exhaust his grievances through threats of retaliation and intimidation." (Dkt. No. 86 at p. 17.) He also claims that he "faced several instances of physical attacks and threats, as well as verbal abuse, threats of retaliation and obstruction of his attempts to file grievances, rendering him eligible for exceptions to the PLRA[.]" (Dkt. No. 91 at p. 6.) It is worth noting that affirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable. See, e.g., Albino v. Baca, No. 10-55702, – F.3d –, 2012 WL 4215918, at *8 (9th Cir. Sept. 21, 2012). However, in this case, plaintiff fails to show that administrative remedies were made effectively unavailable by prison staff. Plaintiff filed numerous grievances during the relevant time period that the purported actions of the defendants giving rise to

Case 2:09-cv-03008-GEB-CKD    Document 93    Filed 11/15/12    Page 9 of 10

plaintiff's claims took place.  In fact, many of those grievances specifically involved alleged improper conduct of the defendants as outlined above, albeit not the conduct that plaintiff alleges in his third amended complaint.  Under these circumstances, plaintiff is not entitled to an exception to the PLRA exhaustion requirement.  Contrary to plaintiff's argument, grievance procedures were clearly available to plaintiff and were in fact readily used by him during the relevant time frame that the circumstances underlying the claims within the third amended complaint took place.  Exhaustion should not be excused.

## IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the September 28, 2012 findings and recommendations (Dkt. No. 90.) are VACATED.

Furthermore, IT IS HEREBY RECOMMENDED that defendants motion for summary judgment (Dkt. No. 81), is construed in part as an unenumerated Rule 12(b) motion to dismiss, and that the motion be granted on the ground that plaintiff failed to exhaust administrative remedies such that this action should be dismissed without prejudice.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned  "Objections to Magistrate Judge's Amended Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

9

1 | waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.
2 | 1991).

 Dated: November 14, 2012

                                       _/s/ Carolyn K. Delaney_
                                       CAROLYN K. DELANEY
                                       UNITED STATES MAGISTRATE JUDGE

7
jeff3008.57.amend